The next case is number 241130, RapidPulse, Inc. v. Penumbra, Inc. Okay, Mr. Bell. Good morning, Your Honor. Judge Dike and may it please the Court, I'm Gabe Bell for the Appellant RapidPulse. We're here in this appeal on the so-called double-closed state claims that are in RapidPulse's thrombectomy system, aspiration thrombectomy catheter system. The issue here and the Board's fundamental error boils down to this. The Board based its decision on could, not would. So the notion that you could implement a double-closed state, not that a person of ordinary skill would do so. And we know that because there is no evidence and no reasoning by the Board in either of its decisions about why a person of ordinary skill would implement a double-closed state. Rather, what the Board relied on is evidence that, for example, from Mr. Brown, the petitioner's expert, that it was possible. Not that the Teagan Provisionals, for example, disclosed it. So the Board had really kind of three types of evidence before. The Teagan Provisionals, which the Board found, did not disclose a double-closed state. In other words, did not support the ultimate patent for Teagan, which did have a double-closed state. That was a key issue in the Board's decision, that it was going to disregard those expressed disclosures in the Teagan patent. Now, there's a reason for this. The reason is that the Provisionals themselves never said double-closed state. And then after RapidPulse put forth its applications in 2018, five days later, Teagan, who is an inventor for the petitioner, changed its application to add, in the international version, a double-closed state, and then ultimately, in the patent that was issued, a double-closed state. But going back, the Teagan Provisionals, the Board found, are what mattered here. And they, the Board said, do not disclose double-closed state. Nonetheless, the Board said there are these other paragraphs, specifically paragraphs 69, 64, and 65, in that order, that the Board quoted and said these sort of look like they would lead to a double-closed state. But Mr. Brown, again, this is the petitioner's expert, admitted in his deposition testimony, and this is at pages 95, 92, through the end of the appendix, pressed repeatedly, did any of these paragraphs disclose performing a double-closed state as opposed to, for example, simultaneous operation? So double-closed state. That's not quite true because the supplemental declaration says that double-closed state serial operation has advantages over simultaneous because you avoid possible mistakes. So the evidence, the evidence from Mr. Brown, I don't believe he ever said, I don't believe he ever said that serial, other than a conclusory sentence, I should say. So he kind of concluded. So I think, and correct me if I'm wrong, I think what Your Honor is referring to is the notion that you would necessarily have a double-closed state in order to confirm the state of the two vows. To confirm before you move on. Well, it's undesirable to have both vows open at the same time. That would seem to be undisputed. And what he was saying is that in order to avoid that possibility, it's good to have a double-closed state serial operation rather than simultaneous operation. Well, so I agree that his testimony focused on not having two vows open. But it doesn't follow from that. If you say don't have two vows open, there's kind of three, there's two other possibilities. You could have simultaneous operation where to avoid having two vows open, you immediately close or open one as you close the other. That would avoid double-open. Yeah, but he says the point of his testimony is that's unreliable, not standard practice, and could lead to possible errors. And so I think what's notable here is that's not what the Board relied on. Well, the Board did rely on that part of his testimony. I don't see anywhere in there where they, for example, in the first decision. They don't quote it, but they cite it. Well, all we have to go on is what the Board says. And what we have in pages 49 to 51, for example, is the Board looking at the Teagan Provisionals, and this is at page 49 and 50, quoting each of those three paragraphs and going over to page 50. At the end of that, simply concluding, therefore we would find it obvious to jump from those provisional paragraphs, none of which disclose double-closed state, to jump to the conclusion that there is in fact a double-closed state. And so there's no other reasoning, there's nothing else that I could see that the Board attempted to bolster its decision with until it got to the second decision. Now, I'll acknowledge in the second decision it gave a more extensive discussion, but that more extensive discussion was about Mr. Brown's testimony at paragraph 165 of his declaration, wherein he explained why you wouldn't want to have two valves open at the same time. Again, that's the only evidence the Board really had, is don't have two valves open. So you're not in that first world. Well, what I'm suggesting to you is that they did have other evidence, and the other evidence was that simultaneous operation created risks of error, and therefore you would have serial operation. So I think the risk of error that that testimony goes to is the notion that you would want to confirm the state, right? You would want to confirm the state before you move on. And this is something I would like to draw the Court's attention to, that my friends on the other side in their red brief five times relied on that rationale. At pages 11, 19, 20, 21, and 22, twice on page 22, five times relied on that rationale, but that was not the Board's rationale. They were quoting their own position from their papers below and attributing it to the Board. And so I think they recognize that there's a problem here, that the Board didn't have actually explained itself enough with regard to confirming the state or otherwise, that they had to reach into their own position and say that the Board acknowledged that, expressly reasoned that, noted that. And I just wanted to make sure that we're all clear that that was not the Board's rationale, no matter how many times they were told. Can you just say a little bit more about the analysis at appendix 132, where they quote extensively from around paragraph 165? This is the second written decision, I believe. But what is, under our standard of review, which is of course very deferential in this context, what is deficient about what the Board is saying in crediting Mr. Brown's analysis? Yes, so even crediting everything that the Board quoted there from Mr. Brown, all Mr. Brown is saying is don't have them both open at the same time. And we know that, for example, if you look in truth, he's saying you would do it serially, and he gave explicit testimony as to why you would do it serially rather than simultaneously. And serially has a double closed state, correct? Serially has a double closed state, yes. But respectfully, Your Honor, he gave notes. Let's look at his rationale. If you look at the first block quote, about halfway down it, he said, by contrast, opening the vent valve first, and then followed by closing the vacuum valve. In other words, if both are open, it would lead to unnecessary loss of fluid. What he's talking about is if you have a vacuum open, and you have vent pushing saline out, they're going to cancel each other out. That's the inefficiency that he's talking about. That says nothing about whether you should do simultaneous, or whether you should do double closed state. It doesn't tell you which of those two other worlds you're in. But he did testify as to why he did that. Respectfully, in the portion quoted right there. I didn't quote it, but it's there in the record. Not at any portion that I found that the board quoted or reasoned based on in any way, shape, or form. All they looked at is the notion that, okay, you wouldn't want to have both open. Let's accept that. Let's accept that you wouldn't want to have both open. The question then is, of the other two worlds I described, are we in a double closed state allowed, or are we in simultaneous operation? And the board's own reasoning later. So if you turn over to page 133, excuse me, 135, the board there is talking about claim six. And there, the board said that claim six is the one that you want to limit the double closed state to no more than 30 milliseconds. The board there is saying, we're going to credit Mr. Brown, who says you wouldn't want to have a double closed state. You would want to minimize the double closed state. No, no, no. He didn't say we wouldn't have a double closed state. He would minimize it. That's not the same thing. It's not exactly the same, but the rationale is, why do you want to minimize it? Because it's inefficient. He said it was inefficient. The petition said it was inefficient. And so the logical conclusion of that, if you don't want double open, and you think double closed is inefficient such that you would want to minimize it, that pushes you to the middle world, where you have simultaneous operation. If you look at the Teigen paragraphs that I referenced earlier, if anything, they suggest also simultaneous as opposed to sequential operation. Paragraph 65, for example, talks about opening one and closing the other. And then it says, and then you wait a period of time, and then you do the reverse. That's not double closed state. That's simultaneous operation. And so for that reason, the board didn't have any testimony that it reasoned based on or cited why a person boarding school would want to do a double closed state. It simply had none. Do you agree that they did have testimony before them as to why it would be dishonorable to have serial operation and not simultaneous? I think there was a conclusory discussion. It says in paragraph 68, this isn't the first. In my opinion, it's far more difficult and reliable to conduct serial operations than medical devices. And it goes on for a prior paragraph explaining why it's more reliable to do that. Well, if that was what the board wanted to reason, it could have, but it didn't. It conspicuously didn't, just like it didn't accept the petitioner's rationale that you would want to confirm the state in between changing. And we put in evidence why that wouldn't be so. In the final declaration at paragraphs 163 to 166 in the second IPR, finally explained why you would have no reason to wait because these are solenoid vows. You know instantly where they are at all times. There's no reason to wait. There's no rationale for safety to wait. So the bottom line is the Teagan provisionals by the board's own finding, the board's own finding, do not disclose double closed state. So you have to kind of squint and read into it in some other way, and our submission is that the board had no viable reason for doing that. So for that two IPRs, two patents, if we were, just for the sake of argument, to find the discussion in the second one around 132 to be adequate, do we have a separate argument that would now allow us to defer with respect to the other IPR, or are they going to rise and fall together? I think they rise and fall together, although the court could conceivably find an invasive problem in the first one. And as the court will note in our brief, we only raised an invasive as to the first one because there really was no connecting the dots whatsoever. But what that does is it undermines the rationale for the second one because the board obviously, or in our view, apparently realized there was a deficiency and felt the need to backfill with Mr. Brown's deposition testimony, which we think if you go through it line by line cuts in exactly the opposite way. He admitted that none of those paragraphs disclosed the timing of either foul. None of those paragraphs disclosed doing double-closed state versus simultaneous operation. He admitted that. Now, he says they include both, but we have cases like OREXO and Vertex Vision that says even if you have two alternatives, you have to have some reason for picking one versus the other, and the board certainly cited none. Well, he did give the reason, right? I mean, you may say the board didn't discuss it enough, but he did give the reason. Well, in our view, that's fatal. In our view, that's fatal. The board needs to tell us under the Chenery principles what it's relying on, and it had the opportunity to explain more, and it tried to explain more in the second one, and even after that second explanation, did not adopt the rationale Your Honor is suggesting, so I think that would be unsupportive as well. They did say serial operation would be obvious, right? Oh, certainly the board, in a conclusory fashion, based on testimony that he wouldn't want to have both open, jumped to the conclusion that you would have a double closed state. But, of course, the mere lack of exclusion in the prior art of something, for example, in the ENDO case, doesn't mean you can jump to the conclusion that any of those options within it are obvious, and I see I'm getting into my rebuttal time. All right. We'll give you two minutes. Thank you, Your Honor. Mr. Williams. Thank you. May I proceed, Your Honor? May I? Thank you. May it please the Court. The board here evaluated very carefully the prior art disclosure, as well as the competing expert testimony from both parties' experts about how a person skilled the art would interpret the disclosure in Tegan and his provisionals, and it made several factual findings, including that the Tegan provisionals themselves disclose and support the double closed state that is in these claims. They also found in the alternative that the Tegan provisionals rendered obvious the double closed state because of the sequential operations that are described there. Appellate wishes the board made different factual findings, but that's not a proper basis for appeal. There is certainly substantial evidence from which the board could have concluded that, even just from the disclosures in Tegan and the provisionals alone. The first thing I'll point out is that the panel admitted in their brief at page five that the board, I'm quoting, the board found without support that the Tegan provisionals, which lack comparable disclosure, disclose a double closed state. We certainly agree with the point that the board found that the Tegan provisionals disclosed a double closed state, and that was a factual finding that they made from the Tegan provisionals themselves, and that's entitled to substantial deference on the review. And that's the end of the case. There's no need to go further. What about motivation? Are you suggesting they didn't also need to find a motivation? Yes, I am. As to that issue, I am, because there was two alternative bases. Look, it's undisputed that Tegan discloses verbatim the claim. Tegan is essentially a copy of the claim, right? So that is in the Tegan patent itself. There's no dispute about that. The only question was, is that section in Tegan supported by Tegan provisionals, which is what the board had to evaluate in the IPR, and that was the question that was presented to us, which is why you get the analysis that you do in IPR 1. Hold on a second. On page 132, this is in the second IPR. The second IPR, okay. They say, Mr. Brown also provided testimony as to why one skilled in the art would have been motivated to perform the opening and closing of the file serially, which is a double closed state, in order to establish a double closed state, right? And what the appellant is saying is they didn't cite the right testimony, because the testimony that they cite only talks about the disadvantages of being open at the same time. Right. Well, I mean, they're responding to a particular argument that was being made by the patent owner as to that testimony. But if we back up and look, let me just show you where the board actually made these factual findings, because I think it will make it, I think it will answer your question, Judge Hague, and it should be relatively quick. So the first place to look is in the 253 IPR, and there this appears at the bottom, starting at the bottom of 130 and into the top of 131. So the first sentence in that section of the analysis says, okay, we're going to agree with the patent owner that the provisionals don't have this exact section from Tegan, column 17. So that section is the thing that says literally double closed state or two periods of off, I forget exactly. But it's very clear that Tegan has that. So then what they said is, okay, so because that's not verbatim there, we're going to look at the provisionals and see if the provisionals support what Tegan says there. And their answer is yes, and they have a whole analysis there. They say it shows you close it, you open it in sequence. And so they say, in a sequence that would result in a double closed state. So that's one factual finding. Then they say, or at least render such a double closed state obvious for the reasons that Mr. Brown said. And there they cite, it's at the 1005, this is Mr. Brown's original declaration testimony, paragraphs 165 to 168. If you then look, for instance, at what Mr. Brown was saying at those paragraphs, including paragraph 165, you get his full analysis of this double closed state. You also get, if you look at one paragraph before that, it's paragraph 164, which has all the rationales for why he gets to that conclusion, including the ones you've already talked about, which is the benefits of having only one vial at a time. And to ensure that, make sure you first go through a state where both vials are closed. So that was his reasoning, and the board found it persuasive. And based on that, found both that the provisional disclosed the double closed state and rendered that double closed state obvious. The same thing is true, by the way, in the 2.3, which I know wasn't in 2.3. Just before you move on, I think you mentioned 164. If the board nowhere expressly mentions 164, what allows us to consider a longer review of the board's analysis? So in the, I think I might have misspoke, because I was intending to quote from the 883 IPR, which does cite to paragraphs 162 to 165, so inclusive. So let me just get you that. Are we limited, though, to what the board says they rely on? I mean, in your review of substantial evidence, I'm not sure. We didn't brief that question. I would want to think about that. Well, what they say on, for example, 133, is Mr. Brown has presented persuasive evidence as to why a person skilled in the art would have been motivated to conduct a battle law operation in a system disclosed in a provisional and sequential manner. And it seems to be the case that he did testify to that. And do we have a problem because they didn't cite that specific testimony when they made that general statement about how he testified to it? Yeah, again, I don't think so. But again, looking, if we were to, so you're, I'm sorry, are you alluding to something? Well, we're looking at substantial evidence. Can we look at all of the evidence in the record that supports the factual conclusion, whether they specifically cited it or not? I think that answer is probably yes. Again, we didn't brief this in this case, Your Honor, but it seems very likely that should be the standard. We can't rely on new reasoning. Correct. If they make factual findings, we can look at the evidence that was submitted to them, whether they specifically called it out or not to see if it supports it. Correct. That's substantial evidence. That's a pretty well-known standard. That's my understanding of substantial evidence, that you should look at the evidence the board had before it and decide did it have enough evidence to support the conclusions that it reached. I would say in this case, though, the Brian Brown testimony is almost irrelevant because the Tegan provisionals themselves, the board cited and relied on, and those Tegan provisionals teach this operation. It's not irrelevant if we conclude that it's not explicit there, but maybe it's obvious. Correct. What you're asking is, is there substantial evidence to support the obviousness finding? Correct. Well, there's two questions before this panel. Was there substantial evidence to support the board's first finding that Tegan provisionals themselves teach the double-closed state because of the language they use in describing the operation of the valves? The second factual finding that they made is the one you just alluded to. The first one is a bit thin. It's thinner. The second one is better supported. The second one, I think, is easier for me to win on. I agree with that. But the first one, I think, is sufficient. I think even that is satisfied as a substantial evidence test because the board said, look, we've read the Tegan provisional. We think it's teaching a double-closed state. Howard agrees that that's what the board did. And I think that's enough, even if Mr. Brown hadn't said a word about any of this in his declaration. But the fact is that he did say quite a few words about it, and the board cited them all. And so if you look at page 84, sorry, page 49 of the appendix, that is the final written decision in the 8A3 case. And there the board made the same factual finding, and they're incited to Mr. Brown's testimony 162 through 165, which includes that paragraph 164 that I just alluded to where he goes through sort of why he gets to that conclusion based on these sequence of allegations. Let me see if I have anything else. Let me ask you, one of their arguments is that your prior art references, this would go to the second argument, are silent on the relative timing of the opening and closing of the alves. Is that true about, or is that at least a fair reading of the prior art references here, and would that matter? I would disagree with that characterization of them being silent about the operation because I think, as I said, the board found— It's typically the timing of the operation, not how long you have to double-close. Oh, I'm sorry, so do you make claims to a particular timing? Is that the question? At least close to that, with the 30 seconds, I think. So we had a different argument for the claims that related to particular frequencies, and I'm sorry, for how long the double-closed state lasts, for instance. We had relied on another reference, Gray, which taught the same idea of a sequence of pulsate, the pause, pulsate again, at a particular frequency, and Mr. Brown explained that given that frequency, that was within the claimed range of the double-closed state, because the double-closed state would obviously be less than the total amount of time that that whole cycle took. So there was certainly sufficient evidence in the record, based on Gray, for the board to conclude that those claims were satisfiable. Unless the court had any other questions, I think I'm happy to— Okay, thank you. Mr. Powell? Yes, thank you. I went back and took a look at the paragraph Rahmer was referencing from the supplemental declaration, and it's really quite short and conclusory, and I think it's telling that my friends didn't even see fit to put that in or cite that as evidentiary support. All that said, is Mr. Brown reiterating his opinion, and it's at paragraph 68 of his supplemental in the first IPR. In my opinion, it's far more typical and reliable to conduct serial operations in medical devices, and the reason he gives is to tell whether the valve is in an open or closed state. So that, again, is that whole rationale of confirming whether it's open or closed, and that is something that they have certainly relied on here more generally, but cited not to the board's rationale adopting that, but cited to their own petition asserting it. Well, but we have a situation where the board on 103, for example, said that Brown testified the reasons that you have serial operation. Well, in fact, he did in this paragraph very explicitly, and the argument seems to be, well, they didn't cite that paragraph. Well, I think the board didn't. We know what the board relied on because of pages 31 and 32. It block quoted the part of Brown that it agreed with. 131. Excuse me, Your Honor. Thank you. 131 and 132. And notably, I would point out to the court, in that block quote, there's one thing elipsed out. One and only one thing elipsed out. That statement that they elipsed out is Mr. Brown saying you would confirm the statement. So the board has deliberately omitted that rationale. Against that backdrop, I don't think a general statement by the board at the end saying, you know, we've looked at all the testimony. Well, it has looked at the testimony. No, it says something more than that. It says Mr. Brown testified as to why you have serial operation. Sure. And Mr. Brown did in the part that they quoted even say there would be serial operation. The question is why? Is there a reason given why you do serial as opposed to simultaneous? And in that block quote, he did not. To answer the court's earlier question, in his deposition testimony, he very clearly said there is nothing. He agreed that there's nothing in the Teagan references that discloses serial as opposed to parallel. And that's the fundamental problem.  And then he's always bringing in testimony to say why someone's filled up the R in the deuce area. That's permissible, right? Well, it was entirely conclusory. Even in the paragraph from the supplemental respectively that respectfully that Your Honor pointed to, there's no reason given why a person would think he would need to confirm the state. And our expert, in fact, put in evidence to the contrary. The board certainly didn't grapple with our counterarguments. So if that's going to be the rationale, then the board's reasoning is deficient by not grappling with the counterarguments. So for all of those reasons, we think the board's. Thank you. Thank you, Your Honor.